## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 4:06-CR-0053-1** |
| | : | |
| **v.** | : | **(Judge Conner)** |
| | : | |
| **FOSTER PRICE, JR.** | : | |

## <u>MEMORANDUM</u>

Presently before the court is defendant's *pro se* motion (Doc. 684) to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.[1] Defendant Foster Price, Jr. ("Price") contends that he is entitled to relief on grounds that: (1) the government failed to disclose a non-prosecution agreement between the United States and witness Jayme Hoagland ("Hoagland"); (2) the government elicited testimony of the sale of drugs other than heroin, unfairly surprising Price and improperly broadening the basis for conviction; (3) the government introduced evidence of alleged co-conspirators' guilty pleas which, in the absence of a curative jury instruction, prejudiced the jury against Price; and (4) his attorney provided

---

[1] See 28 U.S.C. § 2255 ("A prisoner in custody under sentence of a [district] court . . . claiming . . . that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence.").

ineffective assistance of counsel resulting in a violation of his constitutional rights.[2]
For the reasons that follow, Price's motion (Doc. 684) will be denied.

## I.   <u>Statement of Facts & Procedural History</u>

On February 9, 2006, a federal grand jury returned a four-count criminal
indictment charging Price with offenses related to the possession and distribution
of heroin and conspiracy to possess and distribute more than a kilogram of heroin,
each in violation of 21 U.S.C. § 841(a)(1).  (Doc. 1).  On May 10, 2006, Price refused to
enter a plea, and thus a plea of not guilty was entered on his behalf.  (Doc. 94); <u>see</u>
FED. R. CRIM. P. 11(a)(4).

On July 17, 2007, a jury found Price guilty of Counts One, Three, and Four of
the indictment.  (Doc. 377).  On October 16, 2008, the district court sentenced Price
to a prison term of 27 years, fines and fees of $300, and thirteen years of supervised
release.  (Doc. 620).  Price appealed his sentence to the Third Circuit Court of
Appeals on Oct. 22, 2008.  (Doc 628).  The Third Circuit affirmed the judgment of
conviction and sentence on September 30, 2009.  (Doc 655).  Price filed a writ of

---

[2] Price claims that his counsel: (1) failed to adequately pursue Price's claims concerning the non-prosecution agreement, unfair surprise, and introduction of co-defendants' guilty pleas; (2) failed to strenuously contest the court's response to a jury question seeking clarification of 21 U.S.C. § 861(f) (Doc. 684, at 30-34); (3) conceded during his closing argument Price's guilt as to a particular offense (<u>Id.</u> at 35-37); (4) failed to object to an aiding and abetting instruction to the jury (<u>Id.</u> at 38-40); (5) failed to request a "multiple conspiracy" instruction (<u>Id.</u> at 40-43); (6) failed to object to a sentencing enhancement that Price claims was unconstitutional under <u>United States v. Booker</u>, 543 U.S. 220 (2005) (Doc. 684, at 44-45); (7) provided ineffective assistance on appeal (Doc. 684, at 46-47); and, finally, (8)  that the cumulative effect of all these errors was prejudicial. (<u>Id.</u> at 48).

*certiorari* to the United States Supreme Court, which was denied on February 22, 2010. Price v. United States 130 S. Ct. 1550 (2010). On February 28, 2011, Price timely filed[3] the instant motion (Doc. 684) to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. The motion has been fully briefed and is ripe for disposition.

## II.   **Discussion**

A petition for writ of habeas corpus pursuant to 28 U.S.C. § 2255 is the appropriate vehicle by which federal prisoners challenge the legality of a conviction or sentence. See In re Dorsainvil, 119 F.3d 245, 249 (3d Cir. 1997) (stating that a § 2255 motion is "the usual avenue for federal prisoners seeking to challenge the legality of their confinement"). When a federal prisoner seeks §2255 habeas relief, he must file the motion in the district court where he was convicted and sentenced. See 28 U.S.C. § 2255. Where the record affirmatively indicates that a petitioner's § 2255 claim for relief is without merit, the claim may be decided on the record without a hearing. See Virgin Islands v. Nicolas, 759 F.2d 1073, 1075 (3d Cir. 1985).[4]

In his § 2255 motion, Price asserts four main grounds on which he believes the court should vacate his sentence. These claims relate to: (1) an alleged non-

---

[3] Although the instant motion (Doc. 684) was filed on February 28, 2011, more than a year after the United States Supreme Court denied *certiorari* on February 22, 2010, the motion was executed on February 17, 2011, and was thus timely under 28 U.S.C. § 2255(f)(1).

[4] As discussed infra, the court finds that Price's § 2255 motion may be addressed without a hearing.

prosecution agreement between the United States and witness Jayme Hoagland, (2) allegedly fatal variance arising from testimony involving the sale and purchase of drugs other than heroin, (3) evidence of co-conspirator guilty pleas, and the absence of a curative jury instruction, and (4) effectiveness of counsel.  The court will address these arguments *in seriatim*.

### A.     Alleged Non-Prosecution Agreement

In his petition, Price first claims that the United States made a verbal non-prosecution agreement with government witness Jayme Hoagland, and that government counsel's denial of the existence of said agreement during trial was false, thereby misleading the jury.  (Doc. 685, at 15).

To demonstrate the existence of a federal non-prosecution agreement, Price cites testimony that occurred during the cross-examination of Hoagland:

| | |
|---|---|
| [Counsel for Price]: | You didn't go to jail.  Right? |
| [Hoagland]: | No. |
| [Counsel for Price]: | And that was the agreement that this government worked out for you as a result of your information.  Correct? |
| [Counsel for government]: | Objection, Your Honor. |
| [Hoagland]: | Yes. |
| [Counsel for government]: | There is no showing I had any agreement with her or anybody from the U.S. attorney's office had an agreement with her.  That was a state sentence she received. |

(Doc. 471, at 21; see also Doc. 684, at 16).  Price suggests that Hoagland's on-the-record affirmative answer established the existence of a non-prosecution agreement with the federal government.

There is, however, no further evidence suggesting that any such agreement existed, whereas copious evidence suggests that there was no such agreement. Specifically, the government has never denied that Hoagland was granted "use immunity"[5] during her testimony. Indeed, the grant of use immunity was incorporated into the record during Hoagland's grand jury testimony on January 26, 2006. (Doc. 720–1, Ex. A ¶ 4; <u>see</u> Doc. 720–1, Ex. A.1). Pursuant to 18 U.S.C. § 3500, a transcript of this testimony, including the grant of the use immunity agreement, was given to Price's counsel, Christopher A. Ferro, Esquire ("Attorney Ferro") on June 29, 2007. (<u>Id.</u>) The government denies that the federal government entered into any other immunity agreement with Hoagland, and Attorney Ferro recalls no evidence to suggest otherwise . (Doc. 720–1, Ex. A ¶ 5; Doc. 720–1, Ex. B ¶ 4). Moreover, counsel for the government has averred that he "always reduced to writing, or placed on the record when the witness testified, any agreement with the witness," and the government maintains that, even if Hoagland believed she had non-prosecution immunity, "it is more likely the result of Hoagland's confusion than any malfeasance on the part of the government." (Doc. 720, at 17–18; Doc. 720–1, Ex. A ¶ 7). The record contains no evidence of any such

---

[5] Use immunity is a grant of "immunity from the use of compelled testimony and evidence derived therefrom," rather than complete immunity from prosecution. <u>Kastigar v. United States</u>, 406 U.S. 441 (1972). Under the agreement between the federal government and Hoagland, the government was still free to prosecute Hoagland, but could not utilize Hoagland's testimony against Price to do so.

agreement, verbal or written, and therefore Price's claim of the existence of such an agreement is without merit.

### B.    Testimony Pertaining to Drugs Other Than Heroin

Price's second claim is that evidence of his purchase and sale of drugs other than heroin, including marijuana, cocaine, and ecstasy, was used to prove his guilt as to the charges in the indictment, each of which mentioned only heroin.  (Doc. 684, at 24).  Price asserts that the government's failure to include references to those drugs in the charges constitutes a fatal variance in the evidence in violation of his right to due process.  (Id. at 26).

A variance occurs when "the evidence at the trial proves facts materially different from those alleged in the indictment."  United States v. Daraio, 445 F.3d 253, 259 (3d Cir. 2006).  Only variances that are "likely to have surprised or otherwise [] prejudiced the defense" constitute reversible error.  Id. at 262.  A variance must be considered harmless unless it renders the indictment "[in]sufficient[ to] inform[] the defendant of the charges against him so that he may prepare his defense," or if it "present[s] a danger that the defendant may be prosecuted a second time for the same offense."  United States v. Schoenhut, 576 F.2d 1010 (3d Cir. 1978).

During her testimony, Hoagland described many instances of Price buying or selling drugs.  (Doc. 471, at 145–84).  A number of these instances involved the purchase or sale of ecstasy, marijuana, or cocaine, in addition to or separate from heroin.  (Id. at 155, 161).  Price suggests that the introduction of this evidence

"unfairly surprised" him, and prejudicially "broadened the possible basis for conviction." (Doc. 684, at 24).

Price, contrary to his contention, had ample notice that evidence of the purchase or sale of drugs other than heroin would or could be elicited at trial. As part of its Jencks Act disclosure on June 29, 2007, the government provided Price and his counsel with police reports in which Hoagland details many drug transactions made by her and Price, including several which involved drugs other than, or in addition to, heroin. (Doc. 720–1, Ex. C). Such disclosure, well in advance of trial, renders unconvincing the claim that evidence pertaining to drugs other than heroin "unfairly surprised" Price.

Assuming *arguendo* that Price was surprised by the introduction of this evidence, the variance was not prejudicial. Hoagland made only passing references to Price's purchase or sale of drugs other than heroin, and any references to other drugs were secondary to testimony concerning heroin. (Doc. 470, at 155, 161). At no point did the government attempt to introduce evidence concerning drugs other than heroin in order to demonstrate Price's guilt as to the heroin related charges. Rather, Hoagland simply testified that she and Price had purchased heroin many times, and that they occasionally purchased and sold other drugs as well. (Id.) Furthermore, at the end of the trial, the court instructed the jury that "[t]he defendant is not on trial for any act or any conduct not specifically charged in the indictment." (Doc. 473, at 20). Ultimately, any variance between the evidence

presented at trial and the charges in the indictment amounted to, at most, harmless error and is not ground for relief.

###   C.   Co-conspirators' Guilty Pleas

Price next claims that the court's admission of the guilty pleas of multiple co-defendants, without a formal cautionary instruction to the jury, constituted reversible error.  (Doc. 684, at 27).

It is well-settled that co-defendants' guilty pleas cannot be admitted to prove a defendant's guilt.  Bisaccia v. Attorney General of the State of N.J., 623 F.2d 307, 312 (3d Cir. 1980).  Co-defendants' guilty pleas may be admitted for other reasons, however, such as to establish witness credibility.  Government of Virgin Islands v. Mujahid, 990 F.2d 111, 115 (3d Cir. 1993).  Any time co-defendants' guilty pleas are admitted, the court is to instruct the jury that the pleas must not be used to establish the defendant's guilt.  Id. at 115-16 (stating "[a]t [the] very least, the district court should instruct the jury that a co-defendant's guilty plea is no proof whatsoever of the defendant's guilt and must be disregarded completely when determining his guilt or innocence").

The trial court erred by failing to give a jury instruction preventing the jury from considering co-defendants' guilty pleas as proof of defendant's guilt.  This error, however, did not rise to the level of an infringement on Price's constitutional rights.  The cases of Bisaccia v. Attorney General of the State of New Jersey and Government of Virgin Islands v. Mujahid are instructive on the issue.

In <u>Bisaccia</u>, the district court allowed the introduction of a co-defendant's guilty plea without a limiting instruction.  <u>Id.</u> at 308.  The government used the plea in its closing argument to suggest Bisaccia's guilt.  <u>Id.</u> at 308-09.  The Third Circuit held that the admission of the plea, in light of the way it was used and in the absence of a cautionary instruction, interfered with the defendant's constitutional right to due process.[6]  In <u>Mujahid</u>, a co-defendant's guilty plea was also admitted without a special instruction.  <u>Mujahid.</u> 990 F.2d at 114.  Although the government did not definitively state its reason for introducing the plea, there was no evidence of prosecutorial misconduct, and the plea was never used to suggest Mujahid's guilt.  <u>Id.</u> at 117.  The Court of Appeals for the Third Circuit held that the failure to give a cautionary instruction was clearly erroneous, but the absence of prosecutorial misconduct, coupled with significant inculpatory evidence, rendered the error not so egregious as to impede Mujahid's constitutional rights.  <u>Id.</u> at 118.

The present case is more similar to <u>Mujahid</u> than to <u>Bisaccia</u>.  At the end of the government's opening argument, Attorney Ferro, counsel for the government, and the trial judge all agreed that a cautionary jury instruction would be given at the end of trial.  (Doc. 470, at 23).  No such instruction was given.  This appears to have been a mere oversight by the trial court.  There was no evidence of prosecutorial misconduct at any point in this case, and it was the prosecution that

---

[6] <u>Bisaccia</u> was originally a state case, and thus the due process right interfered with was that granted by the Fourteenth Amendment.  In the present case, the due process right at stake is that guaranteed by the Fifth Amendment.

originally requested, "as an abundance of caution," that a special instruction be given. (Id.) Before describing co-defendants' guilty pleas (once in opening arguments, once during direct examination of Ali Patterson, and once during closing arguments), counsel for the government told the jury to disregard the fact that some of Price's co-defendants were not present in court. (Id. at 14-15). Although the government did not provide an explicit reason for introducing the co-defendants' guilty pleas, at no point did it suggest that those pleas were indicative of Price's guilt.

Furthermore, as in Mujahid, the instant record is replete with incriminating evidence unrelated to the guilty pleas. Over three days of trial, the government called twelve witnesses, including drug users who testified to buying heroin from Price, an undercover police officer who executed controlled buys from Price, and witnesses who linked Price to an already-existing conspiracy. (Docs. 470–472). It was the import and breadth of this testimony, rather than co-defendants' guilty pleas, upon which the government rested its case. Even if the government had never referred to the guilty pleas of any of Price's co-conspirators, the testimony given by the government's twelve witnesses overwhelmingly demonstrated the existence of a drug trafficking conspiracy and provided extensive evidence from which a jury could conclude that Price was involved with the conspiracy. Hence, the trial court's failure to provide a cautionary instruction is harmless error.

### D.   <u>Ineffective Assistance of Counsel</u>

Finally, Price asserts that his counsel was ineffective.  A claim of ineffective assistance of counsel is governed by the two-pronged test set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  To prevail on such a motion, a petitioner must demonstrate that: (1) counsel's representation fell below an objective standard of reasonableness; and (2) the deficient representation was prejudicial.  <u>See id.</u> at 687-88.  In determining whether counsel has satisfied the objective standard of reasonableness in accordance with the first prong, courts must be highly deferential toward counsel's conduct.  <u>See id.</u> at 689.  There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  <u>See</u> <u>United States v. Gray</u>, 878 F.2d 702, 710 (3d Cir. 1989).  Only a "rare claim" of ineffectiveness of counsel should succeed "under the properly deferential standard to be applied in scrutinizing counsel's performance."  <u>Id.</u> at 711 (citing <u>Strickland</u>, 466 U.S. at 689-90).  Counsel will not be deemed ineffective for failing to raise a meritless claim.  <u>United States v. Sanders</u>, 165 F.3d 248, 253 (3d Cir. 1999).  To satisfy the prejudice prong, the petitioner must show that, but for counsel's errors, the outcome of the proceeding would have been different.  <u>See</u> <u>Strickland</u>, 466 U.S. at 694.  The district court need not carry out its analysis of the two prongs in any particular order, or even to address both prongs of the inquiry if the defendant makes an insufficient showing in one.  <u>Id.</u> at 697.

A determination of inadequate assistance of counsel necessarily relies on consideration of  the totality of the unique circumstances in each case.  <u>United</u>

States v. Baynes, 687 F. 2d 659, 665 (3d Cir. 1982). Conclusory allegations are insufficient to entitle a petitioner to relief under § 2255. See Sepulveda v. United States, 69 F. Supp. 2d 633, 639-40 (D.N.J. 1999) (citing Blackledge v. Allison, 431 U.S. 63, 74, 97 S.Ct. 1621 (1977)).

In the present case, Price complains that his attorney provided ineffective assistance by: (1) failing to vigorously pursue the lines of reasoning presented in sections A, B, and C above; (2) failing to strenuously challenge the jury instruction clarifying the meaning of 21 U.S.C. § 861; (3) conceding Price's guilt as to a particular offense during closing arguments; (4) failing to object to an aiding and abetting instruction given to the jury; (5) failing to request a "multiple conspiracy" instruction; and (6) failing to object to a United States v. Booker sentencing enhancement. Additionally, Price claims that his counsel was generally ineffective on appeal, and that the totality of these alleged shortcomings was prejudicial.

### 1.   Failure to Pursue Price's Other Grounds

Price first asserts that his counsel was ineffective in that he failed to pursue the claims enumerated in sections A, B, and C above. (Doc. 684, at 24-33). In order to meet the first prong of the Strickland test, Price must show that counsel's conduct fell below and objective standard of reasonableness. See Strickland, 466 U.S. at 687-88. However, the Third Circuit Court of Appeals has articulated a *per se* rule within this test; namely, "[t]here can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless claim." Sanders, 165 F.3d at 253.

Price faults his counsel's failure to vigorously cross-examine Hoagland about a non-prosecution agreement despite the lack of evidence that one ever existed. Price also faults counsel's failure to argue effectively against the introduction of non-heroin-related evidence, *after* counsel's objection to this evidence was overruled.  In his declaration (Doc. 720–1 Ex. B), Price's attorney repeatedly asserts that further pursuit of these issues would have been frivolous. He astutely notes that, in his experience, continuing to argue after an objection has been overruled is potentially more harmful than helpful.  For reasons detailed above, Price's claims based on the alleged non-prosecution agreement between the United States and Hoagland and the introduction of non-heroin drug evidence are meritless. At no point did Attorney Ferro's conduct with respect to these issues fall below an objective standard of reasonableness.

Price next faults Attorney Ferro for failing to obtain the proper jury charge concerning Price's co-defendants' guilty pleas.  (Doc. 684, at 29).  Attorney Ferro did agree that such a charge should have been given, but did not bring the court's attention to its ultimate omission.  (Doc. 470, at 23; Doc. 720–1 Ex. 2 ¶ 17).  Attorney Ferro states, in his declaration, that to draw attention to the lack of the instruction would have been counterproductive to the overall defense strategy Attorney Ferro and Price agreed on: they acknowledged the existence of a conspiracy, and acknowledged that Price was a heroin user, but maintained that Price was operating entirely as an individual and could not be linked to the conspiracy.  (Doc. 720–1 Ex. 2 ¶ 17).  The evidence of the co-defendants' guilty pleas, Attorney Ferro

13

explained, "was largely irrelevant to the defense." (Id.)  Such a strategic

determination is logical and eminently reasonable.

### 2.  Jury Instruction on 21 U.S.C. § 861(f)

Price next argues that his counsel should have more vigorously objected to

the jury instruction given to clarify the meaning of 21 U.S.C. § 861(f).  The section

reads in pertinent part: "distribution of controlled substance to pregnant individual

. . . it shall be unlawful for any person to knowingly or intentionally provide or

distribute any controlled substance to a pregnant individual in violation of any

provision of this subchapter."  Id.  During deliberations, the jury submitted a

question to the court asking whether the knowledge element referred to in the

statute applied to the pregnancy of the individual.  (Doc. 474, at 13–14).  The answer

proposed by the government was "[t]o the jury, the defendant must know that he

was distributing a controlled substance.  He does not need to know that the

individual to whom he distributed the controlled substance was pregnant at the

time of the distribution."  (Id. at 20).  Price's counsel objected to this instruction,

instead insisting that the jury simply be given the text of the statute and allowed to

make their own inferences.  (Id. at 18).

At the time of trial, no case law directly addressed the issue of whether the

knowledge requirement extended to the circumstance of pregnancy or applied only

to the distribution of a controlled substance.  In 2006, however, the Third Circuit

answered a similar question regarding 21 U.S.C. § 860.  United States v. Jackson,

443 F.3d 293, 299  (3d Cir. 2006).  In that case, the defendant was convicted under 21

U.S.C. § 860(a) of possession with intend to distribute cocaine within 1,000 feet of a

school.  The Third Circuit concluded that, while the defendant had to know he was

distributing cocaine, "the government does not have to show that the defendant

had knowledge that he was possessing narcotics *within* 1,000 feet of a school."  Id.

The court in the present case, noting that the distance element of § 860(a) and the

pregnancy requirement in § 861(f) appeared to apply to their respective sections in

the same manner, answered the jury's question as counsel for the government

suggested.  (Doc. 474, at 20).  Price's attorney determined that the government's

suggested response was an accurate statement of the law, and concluded that

*further* argument with the court's ruling to provide the jury with the government's

suggested answer would have been fruitless.  (Doc 720-1, Ex. C).  Price's claim of

ineffective assistance on the ground that his counsel's objection was not pursued

with sufficient ardor is baseless.

### 3.   Concession of Partial Guilt During Closing Argument

Price's next claim is that his counsel, "without first consulting with [Price],

created a conflict against [Price]'s better interest by admitting or conceding that

[Price] was guilty of a charged offense," particularly possession of heroin, during

closing arguments.  (Doc. 684, at 35).  Attorney Ferro, however, disputes this in his

declaration:

> Prior to my closing I have a distinct recollection of discussing this
> matter with Price.  Together we determined that there was no way to
> counter the law enforcement officer's testimony, and trying to do so
> without supporting evidence would damage the defense's credibility
> with the jury.

> As a result, we jointly determined that, by conceding this charge, we could gain credibility with the jury and thus strengthen our argument that, while Price may have sold heroin, he was not involved in a conspiracy with his co-defendants.  In short, it was an attempt to "stop the bleeding" and keep Price from facing conviction on the conspiracy charge.

(Doc. 720-1, Ex. B ¶¶ 19, 20).  This is consistent with Attorney Ferro's statements of Price's overall defense strategy, and is entirely reasonable in light of the fact that the conspiracy charge, which in all likelihood carried a sentence in excess of 20 years, was far more serious than any other charge.

Moreover, counsel does not have to choose what his or her client deems the "best" legal strategy, as long as he or she chooses a valid one.  See United States v. Gray, 878 F.2d 702, 710 (3d Cir. 1989).  Price contends that "it would have been a better strategic decision . . . to have conceded to/stipulated to [Price's possession of heroin] prior to trial."  (Doc. 684, at 36).  Counsel's decision to not do so, however, cannot be said to have been objectively unreasonable under the very deferential standards of Strickland.

### 4.   **Failure to Object to Aiding and Abetting Instruction**

Price's fourth contention is that his counsel rendered ineffective assistance by failing to contest a jury instruction that Price could be convicted of Count III of the indictment—possession with intent to distribute heroin, in violation of 21 U.S.C. § 841(a)(1)—under the an aiding and abetting theory, even though the indictment charged him as a principal offender.  Any objection to this instruction, however, would have been without merit.  In United States v. Provenzano, the

Third Circuit noted that "[a]n individual may be indicted for commission of a substantive crime and convicted by proof showing him to be an aider and abettor." United States. v. Provenzano, 334 F.2d 678, 691 (3d Cir. 1964).  In the present case, the court instructed the jury in a manner similar to that in Provenzano regarding what the government must prove to support conviction on count three under a theory of aiding and abetting.  (Doc. 473, at 36, 37); see Provenzano, 334 F.2d at 689. The government is correct as a matter of law that the theory of aiding and abetting did not have to be stated in the charge, and Price's attorney's decision not to pursue a baseless objection to that theory was objectively reasonable.

### 5.      Failure to Request Multiple Conspiracy Instruction

Price's next assertion is that his counsel was ineffective in failing to pursue a multiple conspiracy instruction.  Pursuing this instruction is a viable defense strategy to circumvent charges that the defendant was involved in a broader conspiracy, thus minimizing the defendant's role.  A multiple conspiracy instruction explains to the jury that a defendant may not be charged in a large conspiracy when he is only involved in one of many smaller conspiracies (improperly combined into a single charge).  See United States v. Rivera-Velez, No. 10-4190, 2012 WL 899532 (3d Cir. Mar 19, 2012).

Attorney Ferro asserts that he and Price had agreed to not request such a charge, as doing so "would have undermined the defense theory of the case," namely, the portrayal of "Price as a seller of drugs, but not one involved in any conspiracy, let alone one with his co-defendants."  (Doc. 720-1, Ex. B ¶¶ 25, 27).

17

Attorney Ferro's decision, after appropriate consultation with his client, is the epitome of sound defense strategy. Accordingly, the failure to pursue a multiple conspiracy instruction does not constitute ineffective assistance of counsel.

**6.    Failure to Challenge Firearms-Related Sentencing Enhancement**

Price alleges that his counsel failed to object to a two-point sentencing enhancement for possession of dangerous weapons.  (Doc. 684, at 44; Doc. 527, at 2).  Price claims that the enhancement should have been challenged on two grounds: first, he was never charged with a separate crime for possession, and second, the sentencing guideline was treated as mandatory rather than advisory, thus violating Booker.  (Doc. 684, at 44-45).  Both facets of his claim lack merit.

With respect to the first ground, as noted above, prosecutors have broad discretion in charging decisions.  See Wayte, 470 U.S. at 607.  The government had no duty to bring a charge for possession even though they provided evidence of the use of a dangerous weapon.  The government's decision to not bring a separate weapons charge does not render the enhancement inapplicable to the counts on which Price was convicted.

On the second ground, United States Sentencing Guideline § 2D1.1(b)(1) states "[i]f a dangerous weapon (including a firearm) was possessed, increase [offense level] by **2** levels."  U.S.S.G. § 2D1.1(b)(1).  Price contends that, because this guideline is written as an if/then statement, the guideline is mandatory rather than advisory and is thus unconstitutional under Booker.  See Booker, 543 U.S. at

226 (holding that Federal Sentencing Guidelines must be advisory rather than mandatory).  Price claims that "[h]ad Section 2D1.1(b)(1) read or instructed in the advisory language of: 'if a dangerous weapon was possessed (including a firearm), the court **may** increase by 2 levels'–then there would be no violation" of his constitutional rights.

This argument is quite strained.  The Third Circuit, while recognizing that Booker "brought about sweeping changes in the realm of federal sentencing," states that "[u]nder a [post-Booker] advisory Guidelines scheme. . . [t]he only change in the equation is that, at the end of the day, the district court is not bound" by the particular section of the Guidelines.  United States v. Grier, 475 F.3d 556, 561(3d Cir. 2007).  There is no evidence that § 2D1.1(b)(1) was ever applied to Price's sentence in any capacity other than an advisory one, and thus his attorney was not objectively unreasonable for failing to suggest otherwise.

## 7.   Assistance on Appeal and Cumulative Effects

Price's penultimate and final claims are that his counsel was ineffective on appeal to the Third Circuit, and that the cumulative effects of all errors mentioned above prejudiced his defense.  (Doc. 684, at 46, 48).  Price's claim that his counsel was ineffective on appeal is basically a statement that counsel failed to bring claims 1–6, as listed in this section, before not only this court but also the Third Circuit Court of Appeals.  Those claims do not show that Attorney Ferro was ineffective during trial, therefore they do not show that he was ineffective on appeal.

19

Finally, Price argues that the cumulative effect of his counsel's alleged errors prejudiced his defense. Price's "cumulative effect" argument is futile given the court's conclusion that counsel was not ineffective. Lacking proof of error, the court cannot assert that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

III.   **Conclusion**

For the foregoing reasons, Price's § 2255 motion (Doc. 684) will be denied. An appropriate order follows.

　　S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge

Dated:      July 24, 2012

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 4:06 CR-00053** |
| | : | |
| **v.** | : | **(Judge Conner)** |
| | : | |
| **FOSTER PRICE, JR.** | : | |

## ORDER

AND NOW, this 24th day of July, upon consideration of the motion (Doc. 684) to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255, filed by Foster Price, Jr., and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1.     The motion (Doc. 684) is DENIED.

2.     A certificate of appealability is DENIED.  See 28 U.S.C. § 2253(c).

  S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge